# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LANDIS, | Case No. 1:23-cv-00881-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.     INTRODUCTION

Plaintiff Lisa Landis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.     FACTUAL BACKGROUND

On March 1, 2021, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on August 31, 2013, due to spinal stenosis, osteoarthritis, disk degenerative disease, facet arthritis, major anxiety; depression; fibromyalgia; hidradenitis suppurativa, and irritable bowel disease. (Administrative Record ("AR") 13, 70, 71, 89, 90, 256.) Plaintiff

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").
[2]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

thereafter amended her alleged onset date to March 10, 2016.  (AR 13, 40.)

Plaintiff was born on December 29, 1965, and was 50 years old on the alleged onset date. (AR 70, 89, 278, 321, 323.)  She has at least a high school education and has past work as an administrative assistant.  (AR 24, 40–41, 85, 102, 257, 258.)

### A.  Relevant Medical Evidence[3]

In February 2015, Plaintiff complained of sinus pressure, headaches, and swollen tonsils. (AR 649–51.)  She denied depression.  (AR 650.)  Upon examination, Plaintiff exhibited good judgment and insight, normal mood and affect, and normal recent and remote memory.  (AR 651.)

In January 2017, Plaintiff reported having "frequent anxiety secondary to [her] father's current health condition," depression, and restless sleep.  (AR 1154.)  Her mental status examination indicated she was anxious and depressed.  (AR 1154.)  The treatment provider referred her to counseling and behavioral psychotherapy, noting that Plaintiff had "some depression and anxiety secondary to family and social stressors."  (AR 1155.)

At her initial counseling appointment with Michael Ross, Ph.D. that month, Plaintiff reported a "history of anxiety that is not immobilizing, but is irritating and interferes with the various aspects of her life."  (AR 1149.)  She was assessed with an unspecified anxiety disorder and posttraumatic stress disorder.  (AR 1149.)  Later in January 2017, Plaintiff continued to endorse anxiety, citing "many family and social stressors."  (AR 1139.)  A mental status examination noted Plaintiff was anxious.  (AR 1140.)  She was weaned off Effexor and prescribed alprazolam (Xanax).  (AR 1141.)

Plaintiff complained of headache, eye pressure, light-headedness, nausea, and vomiting in January 2018.  (AR 882–87.)  She denied depression, and her examination results were normal. (AR 886.)

In March 2018, Plaintiff presented to the clinic for removal of skin tags.  (AR 853–58.) She denied depression, and her examination results were normal, including good judgment and

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

insight, normal mood and affect, and normal recent and remote memory. (AR 857.)

Plaintiff complained of "feeling off" and an increase in feelings of anxiety in April 2018. (AR 852.) She denied depression but endorsed sleep disturbances. (AR 852.) The treatment provider instructed Plaintiff to continue taking Xanax as prescribed for "episodes of increased anxiety." (AR 853.) That same month, Plaintiff presented for a follow-up appointment to treat her anxiety. (AR 847.) She also reported depression and sleep disturbances. (AR 847.) Upon examination, Plaintiff was noted to be anxious and depressed. (AR 848.) She was directed to continue to take Xanax as needed for anxiety and to continue to follow up with her counselor for her depressive disorder. (AR 848–49.)

In May 2018, Plaintiff complained of a "bump" on her armpit in May 2018. (AR 839–44.) Her "unspecified anxiety disorder" diagnosis was noted, and the treatment note indicated she would continue taking Xanax "as needed." (AR 843.) She denied depression, and her examination results were normal. (AR 843.) That same month, Plaintiff complained of lower back pain. (AR 837.) Upon examination, Plaintiff exhibited good judgment and insight, normal mood and affect, and normal recent and remote memory. (AR 838.)

Plaintiff complained of leg pain and swelling in June 2018. (AR 826–30.) Her mental status examination was normal. (AR 829.) In July 2018, Plaintiff told Dr. Ross that she "has several medical problems causing her to be anxious." (AR 809.) That same month, she complained of lower abdominal cramping and diarrhea. (AR 812–13.) Her mental status examination results were normal as before. (AR 813, 820.) Later that month, Plaintiff followed up for her diarrhea and bradycardia symptoms. (AR 803.) Upon examination, she exhibited normal mood and affect. (AR 805.)

In August 2018, Plaintiff reported to Dr. Ross that pain caused her anxiety to escalate. (AR 798.) Plaintiff complained to Dr. Ross in November 2018 of a "strong sense of anxiety" that was "interfering with her stability." (AR 750.) Later that month, Dr. Ross noted Plaintiff "appeared very distressed." (AR 741–42.)

Plaintiff presented for a follow up appointment to treat her "chronic anxiety" in January 2019 (AR 1654–55.) She reported "worsening anxiety" rated "above a 5/10" and that she felt

"like she wants to cry for the last 2 days." (AR 1658.) She complained of difficulty with sleep and "awful mood." (AR 1658.) Upon mental status examination, she was noted to be anxious, depressed, and tearful. (AR 1658.) Plaintiff was advised to continue her appointments with Dr. Ross and was provided a one-week supply of Lorazepam for anxiety. (AR 1658.) She was also directed to make a follow up appointment with her primary care provider, Marvi Miranda, M.D., to discuss potential medication changes for her "chronic anxiety/depression." (AR 1658.) From February to April 2019, Plaintiff reported that her anxiety "has not been controlled." (AR 1600, 1624, 1653.) She was given different medications to try. (AR 1601, 1625, 1654.)

In June 2021, State agency physician R. Solomon, M.D., assessed Plaintiff's mental residual functional capacity (RFC) [4] and found Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and no limitations adapting or managing oneself. (AR 80.) Based on this, Dr. Solomon deemed Plaintiff's anxiety and obsessive-compulsive disorder not severe. (AR 80–81.) Upon reconsideration in July 2021, State agency physician Leslie E. Montgomery, M.D., affirmed Dr. Solomon's findings and lack of severity determination. (AR 97–98.)

Plaintiff's primary care physician, Dr. Miranda, completed a medical source statement in July 2021, wherein Plaintiff's anxiety and depression symptoms were noted. (AR 2208.) Dr. Miranda opined that Plaintiff would be off task 25% or more of the day, would be incapable of even "low stress" work, and would be absent from work more than four days per month. (AR 2210.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 22, 2021, and again on reconsideration on July 13, 2021. (AR 106–110, 118–23.) Consequently, Plaintiff

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

requested a hearing before an Administrative Law Judge ("ALJ"). (AR 124–25.) The ALJ conducted a hearing on August 2, 2022. (AR 33–63.). Plaintiff appeared at the hearing with her representative and testified as to her work history and alleged disabling conditions. (AR 42–53.) A Vocational Expert ("VE") also testified at the hearing. (AR 53–63.)

**C.  The ALJ's Decision**

In a decision dated August 10, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 13–26.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on December 31, 2018, and she had not engaged in substantial gainful activity during the period from her amended alleged onset date of March 10, 2016, through her date last insured of December 31, 2018 (step one). (AR 15–16.) At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar spine problems, including foraminal stenosis, spondylosis, facet arthropathy, displacement of lumbar intervertebral disc, and neuralgia/neuritis with pain/sciatica; morbid obesity; bilateral knee problems, including tricompartmental osteoarthritis, osteophytosis, left knee small degenerative medial meniscus tear, and status post remote bilateral arthroscopy with pain/effusion; fatigue; chronic arthralgia/myalgia; varicose veins/venous insufficiency of the bilateral lower extremities with pain/edema status post ablations of bilateral saphenous veins; and plantar fasciitis with pain in both feet. (AR 16–18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18–19.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that, through the date last insured, Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) and as follows: The claimant is able to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently in light work as defined by the regulations. She can stand and/or walk four hours in an eight-hour day. She can sit six hours in an eight-

> hour day.  She requires a sit/stand option at 45 to 60-minute intervals, for three to five minutes at time, during which periods she may remain on task.  She may never climb ladders, ropes, scaffolds, or crawl. She may occasionally climb ramps and stairs, stoop, kneel, and crouch.  With the lower extremities she may occasionally push, pull, and engage in foot pedal operations.  She must avoid more than occasional exposure to extreme cold and vibration.  She must avoid all exposure to hazards such as dangerous moving machinery and unsecured heights.

(AR 19–24.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 20.)

Based on this RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as an administrative clerk (step 4).  (AR 24.)  The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the local and national economies, specifically appointment clerk and sorter (step five). (AR 25–26.)  The ALJ concluded Plaintiff was not disabled at any time from March 10, 2016, the amended alleged onset date, through December 31, 2018, the date last insured.  (AR 26.)

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on May 4, 2023.  (AR 1–6.)  Therefore, the decision became the final decision of the Acting Commissioner.  20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's

conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.     DISCUSSION**

Plaintiff contends that the ALJ erred in not finding her mental impairments "severe" at step two. (*See* Doc. 19 at 14–18; Doc. 21 at 2–6.) Plaintiff further asserts that the ALJ improperly discounted Plaintiff's testimony regarding her psychiatric limitations. (*See* Doc. 19 at 18–19; Doc. 21 at 6–7.)

Defendant counters that that the ALJ did not commit harmful error in deeming Plaintiff's

mental impairments not severe, and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (*See* Doc. 20 at 12–20.)

### A. The ALJ Committed Harmful Error at Step Two

#### 1. Legal Standard

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on [their] ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and Social Security Ruling ("SSR") 86–8).

"[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities." *Id.* at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." SSR 85–28, 1985 WL 56856, at *3. Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," (2) "[c]apacities for seeing, hearing, and speaking," (3) "[u]nderstanding, carrying out, and remembering simple instructions," (4) "[u]se of judgment," (5) "[r]esponding appropriately to supervision, co-workers and usual work situations," and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing

disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28.  "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153.  In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (*citing Yuckert*, 482 U.S. at 153–54).  Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12–cv–2542–CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687)).

**2.    Analysis**

At step two, the ALJ noted Plaintiff had "medically determinable mental impairments." (AR 17.)  Nonetheless, the ALJ found those impairments were not severe because they caused no more than a "mild" limitation in the four functional areas of (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself.  (AR 17–18.)  Specifically, the ALJ observed that mental status examinations "found [Plaintiff's] recent and remote memory to be normal," "frequently revealed a normal mood and affect," and "revealed [Plaintiff] to be fully oriented with intact judgment."  (AR 17–18.)

Viewing the record as a whole, the medical evidence in this case does not "clearly establish" that Plaintiff lacks a medically severe mental impairment.  *Webb*, 433 F.3d at 687.  In

concluding that Plaintiff's mental impairments were nonsevere, the ALJ improperly selectively highlighted those portions of Plaintiff's records that supported the ALJ's conclusion that the impairments were nonsevere, while downplaying or omitting evidence to the contrary. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.).

For example, the mental status examinations cited by the ALJ were conducted during clinic visits to treat physical—not mental—ailments. (*See* AR 17–18 (citing AR 650 (sinus pressure and headache); AR 805 (diarrhea, hypertension, and bradycardia); AR 813 (cramping and diarrhea); AR 820 (chronic back pain); AR 829 (leg pain and swelling); AR 838 (lower back pain); AR 843 (lump on armpit); AR 857 (removal of skin tags); AR 886 (headache, eye pressure, light-headedness, nausea, and vomiting).) The ALJ wholly ignored evidence of abnormal mental health status examinations conducted, both during and shortly after[5] the relevant period, as part of Plaintiff's treatment for psychiatric disorders, specifically chronic anxiety, depression, and posttraumatic stress disorder. (*See* AR 848, 1140, 1149, 1154, 1658.) This disregarded evidence also documents "frequent anxiety," "depression," sleep disturbances, anxiety that "interferes with the various aspects of [Plaintiff's] life," "episodes of increased anxiety," "escalat[ing] anxiety," a "strong sense of anxiety" that was "interfering with [Plaintiff's] stability", "very distressed appearance," "worsening anxiety," "awful mood," tearfulness, and anxiety that "has not been controlled." (*See* AR 741–42, 750, 798, 809, 847, 852, 1139, 1149, 1154, 1600, 1624, 1653, 1658.) Thus, contrary to the ALJ's characterization of Plaintiff's medical evidence, the record as a whole demonstrates a history of treatment for psychiatric disorders that is supported by

---

[5] As stated by the Ninth Circuit: "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of . . . pre-[date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832) (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225).

11

abnormal examination results. Such evidence is enough to meet the *de minimis* standard posed at step two and classify Plaintiff's mental impairments as severe. *See Martinez v. Comm'r of Soc. Sec. Admin.*, No. CV-17-0089-PHX-DMF, 2017 WL 5000332, at *17 (D. Ariz. Nov. 2, 2017) (objective evidence showing that impairments were "greater than a slight abnormality" was enough to satisfy the de minimis step-two standard).

Even if Plaintiff cannot "ultimately succeed in proving [they are] disabled," an ALJ errs at step two if their severity determinations are not supported by substantial evidence. *Telly v. Saul*, No. 1:19-CV-00456-SKO, 2020 WL 5545274, at *11 (E.D. Cal. Sept. 16, 2020). Accordingly, the ALJ's severity determination is not supported by substantial evidence and constitutes legal error. *See Achakzai v. Berryhill*, No. 18-CV-07005-JCS, 2020 WL 1450554, at *21 (N.D. Cal. Mar. 25, 2020) (holding that, because the medical evidence met de minimis step-two standard, ALJ severity determination was not supported by substantial evidence and constituted "legal error"); *Martinez*, 2017 WL 5000332, at *16 (holding that, because plaintiff's impairments were "more than de minimis in degree," the ALJ erred by labeling certain of plaintiff's impairments non-severe).

### 3. The Error is Not Harmless

If an ALJ errs at step two, however, that error is harmless if the ALJ considers the impairment at issue in the RFC analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This is because "[t]he RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* (internal quotations and alterations omitted); *see Michaud v. Saul*, No. 18-CV-02625-JLS-MDD, 2019 WL 5684411, at *3 (S.D. Cal. Nov. 1, 2019).

In assessing Plaintiff's RFC, the ALJ mentioned Plaintiff's mental impairments only once, determining that the State agency physician Drs. Solomon's and Montgomery's finding that Plaintiff had "no severe mental impairments" was "persuasive" because it was "consistent with the record" for the relevant period, specifically mental status examinations that were "generally

unremarkable." (AR 22–23.) In making this determination, however, the ALJ relies on the same, cherry-picked mental status examinations that were cited at step two (*compare* AR 17–18 *with* AR 23), thereby compounding that error. Nowhere in the RFC does the ALJ provide any limitations caused by Plaintiff's mental impairments or state a rationale as to why they pose none. (*See* AR at 19–24.) This is despite the longitudinal record showing Plaintiff's diagnosis of and treatment for chronic anxiety, depression, and post-traumatic stress disorder. (*See* AR 741–42, 750, 798, 809, 847, 848, 852, 1139, 1140, 1149, 1154, 1600, 1624, 1653, 1658.)

The Commissioner asserts that "there are no medical opinions or findings asserting that Plaintiff had any severe mental impairments, nor do any medical opinions or findings endorse any mental functional limitations." (Doc. 20 at 8.) This contention overlooks the opinion of Dr. Miranda, who, after noting Plaintiff's symptoms of anxiety and depression, found that Plaintiff would be off task 25% or more of the day, would be incapable of even "low stress" work, and would be absent from work more than four days per month.[6] (AR 2210.) Fully crediting even some of these limitations could have led a reasonable ALJ to reach a different disability determination, in light of the VE's testimony that a person with Plaintiff's RFC who was off task more than 15% of the workday, or who would miss a minimum of three workdays per month, would be unable to perform both Plaintiff's past relevant work and work in the national economy.[7] (*See* AR 58.) In view of the foregoing, the Court cannot conclude that the ALJ's

---

[6] The ALJ deemed Dr. Miranda's opinion "not persuasive," but did so without addressing the non-physical impairments opined therein. (*See* Doc. 23–24.)

[7] The VE's testimony as to other hypothetical limitations of Plaintiff's mental impairments is not as clear. According to the ALJ at steps four and five, the VE testified that a person with Plaintiff's RFC could perform both her past relevant work and the representative jobs identified "even if she had the following additional mental limitations:"

> She is able to learn, remember, and perform simple and detailed work tasks, involving simple and detailed work instructions, which are performed in a routine, predictable, and low stress work environment (defined as one in which there are no rapid production pace work tasks or high quota requirements, few workplace changes, and no more than occasional personal supervision). She can attend, concentrate, and maintain pace for two hours at a time with normal breaks. She may have occasional contact with coworkers and the public.

(AR 24, 26.) While the VE did indeed so testify (*see* AR 57–58), they later testified to the opposite: that that a person with Plaintiff's RFC who was limited to "learn and remember simple, but not detailed, work tasks, work instructions; routine predictable environment with low stress; few changes; no rapid processes; occasional personal supervision; attend, concentration, persistence, and pace for two hours; [and] occasional contact with coworkers and the public" would be <u>unable</u> to perform both Plaintiff's past relevant work and the representative jobs. (*See* AR 61 ("Q. Would that limitation preclude the past work and also the work as a Clerk and Sorter? A Yes, it would preclude it.").)

error was harmless. *Stout*, 454 F.3d at1056; *Molina*, 674 F.3d at 1115. *See also Ruiz v. Saul*, No. CV-18-0292-TUC-BGM, 2019 WL 4594221, at *21 (D. Ariz. Sept. 23, 2019) (holding that ALJ's omission of non-severe impairment from RFC was reversable error); *Michaud*, 2019 WL 5684411, at *5 (same).

### B. Remand for Further Proceedings is Appropriate

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary to properly evaluate the record, including the opinions of Plaintiff's examining and non-examining sources. Accordingly, the Court remands this matter to the Commissioner for further administrative proceedings. *See, e.g.*, *Chavez v. Saul*, No. 2:18-cv-1079-EFB, 2019 WL 4747698, at *6 (E.D. Cal. Sept. 30, 2019) (finding error at step two and remanding for further administrative proceedings).

### C. The Court Declines to Determine Plaintiff's Remaining Assertion of Error

As the Court finds that remand is appropriate for the ALJ to reconsider the medical and opinion evidence, the Court does not reach Plaintiff's additional assertion of error regarding the ALJ's consideration of Plaintiff's testimony regarding her psychiatric limitations. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Lisa Landis and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **March 14, 2024**                    /s/ *Sheila K. Oberto*
                                                                   UNITED STATES MAGISTRATE JUDGE